UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SCOTTSDALE INSURANCE                          :
COMPANY,                                      :
                                             :
                    Plaintiff,               :          **REPORT AND**
                                             :          **RECOMMENDATION**
        -against-                            :
                                             :          20 Civ. 3510 (ENV) (VMS)
TOP GRADE EXCAVATING N.Y. INC.,  :
CERTIFIED TESTING LABORATORIES,:
INC., JACK VITALE and DIANE                   :
VITALE,                                       :
                                             :
                    Defendants.               :
-----------------------------------------------------x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Scottsdale Insurance Company ("Plaintiff") brought this diversity

action against Defendant Top Grade Excavating N.Y. Inc. ("Defendant Top

Grade"); Certified Testing Laboratories, Inc. ("Certified"); Jack Vitale and Diane

Vitale (together, "the Vitales") seeking a declaratory judgment pursuant to 28

U.S.C. §§ 2201-2202 stating that Plaintiff has no obligation to defend or indemnify

Defendant Top Grade in an underlying state-court litigation pursuant to certain

limitations and exclusions in a general commercial insurance policy that Plaintiff

issued to Defendant Top Grade.  See ECF No. 1.[1]

Before the Court is Plaintiff's default judgment motion, which has been

---

[1] Plaintiff originally also named Richard Zaloum ("Mr. Zaloum") as a Defendant
but voluntarily dismissed Mr. Zaloum from the case.  See ECF Nos. 1, 6.

referred for a report and recommendation.  See ECF No. 16.  For the reasons that follow, this Court respectfully recommends that the District Court grant Plaintiff's motion as to Defendant Top Grade, and deny Plaintiff's motion without prejudice as to Certified and the Vitales.

## I. Background

The following facts are drawn from the docket, including Plaintiff's complaint and documents referenced therein and submitted in connection with Plaintiff's instant motion.  See ECF Nos. 1, 16-4, 16-5.[2]  One such document is a general commercial insurance policy, number CPS 12222742, issued by Plaintiff to Defendant Top Grade ("Policy").  See ECF No. 1 ¶¶ 10-12; Policy, annexed at ECF No. 16-4.  Another is an Order issued by New York State Supreme Court Justice Robert J. McDonald granting the Vitales's motion for partial summary judgment in an underlying state-court litigation.  See ECF No. 1 ¶ 17; Vitale, et al., v. RLD Grp., LLC, et al., Index No. 704272/2013 (N.Y. Sup. Ct., Queens Cnty. July 22, 2016), annexed at ECF No. 16-5.

### a. The Policy

Plaintiff is a foreign insurance company incorporated in Ohio with its

---

[2] Rule 10(c) of the Federal Rules of Civil Procedure provides that a pleading includes any statements adopted by reference.  See Fed. R. Civ. P. 10(c); Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (holding that a complaint is deemed to include written instruments incorporated by reference and documents integral to the complaint).

principal place of business in the State of Arizona.  See ECF No. 1 ¶¶ 2, 10.

Defendant Top Grade is a New York corporation with its principal place of

business in the State of New York; as relevant here, its services include excavation

contractor work.  See id. ¶¶ 3, 15.

In June 2020, Plaintiff issued the Policy to Defendant Top Grade, effective

June 15, 2010, to June 15, 2011 ("Policy").  See id. ¶ ECF No. 16-4.  As relevant

here, the Policy has a limit of $1,000,000 per each occurrence, and provides that

> [Plaintiff] will pay those sums that [Defendant Top Grade] becomes
> legally obligated to pay as damages because of . . . "property damage"
> to which this insurance applies.  [Plaintiff] will have the right and
> duty to defend [Defendant Top Grade] against any "suit" seeking
> those damages.  However, [Plaintiff] will have no duty to defend
> [Defendant Top Grade] against any "suit" seeking damages for . . .
> "property damage" to which this insurance does not apply.

ECF No. 1 ¶¶ 10-11; see ECF No. 16-4 at 4.  The Policy has an Earth or Land

Movement Exclusion which, in relevant part, provides that

> [The Policy]  does not apply to . .  . "property damage[]" . . . caused,
> directly or indirectly or in whole or in part, by the movement, in any
> direction, of earth or land, regardless of:
>
> 1.  The cause or source of such earth or land movement;
>
> 2.  Whether such earth or land movement arises from natural or
>     man-made forces or causes; or
>
> 3.  Whether such earth or land movement occurs:
>
>      a.  Independently of;
>
>      b.  As a result of;

3

      c.  In concurrence or connection; or

      d.  In any sequence associated

with any other natural or man-made forces, causes, events or operations.

Earth or land movement includes, but is not limited to, subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather.

ECF No. 1 ¶ 12; ECF No. 16-4 at 60.

### b. Construction Work Performed At The RLD Property

Non-party RLD Group, LLC ("RLD") is the fee owner of real property at 73-02/04 Ditmars Boulevard, East Elmhurst, County of Queens ("RLD Property"). See ECF No. 1 ¶ 15; 16-5 at 2. As relevant here, non-party general contractors Artec Construction and Development Corp. ("Artec") and Falcon Construction & Development, LLC ("Falcon") performed construction work at the RLD Property which included demolition and excavation activities. See ECF No. 1 ¶ 15; ECF No. 16-5, passim. RLD and Artec hired Certified, a New Jersey corporation with its principal place of business in the State of New York, and its licensed engineer Richard Zaloum to supervise the construction, and Defendant Top Grade was hired as a sub-contractor to perform excavation work. See ECF No. 1 ¶¶ 3, 15; ECF No. 16-5 at 2.

### c.  Property Damage, Underlying Action And Underlying Order

The Vitales are individuals residing in New York and the fee owners of real property that adjoins the RLD Property, located at 73-08 Ditmars Boulevard, East Elmhurst, New York ("Vitale Property").  See ECF No. 1 ¶¶ 6, 13-14.  On October 7, 2013, the Vitales filed a state-court action against RLD, Artec, Falcon, Certified, Mr. Zaloum and Defendant Top Grade alleging that the Vitale Property sustained property damage "arising from excavation and construction work performed by [the state] defendants[]" at the RLD Property ("Underlying Action").  See id. ¶¶ 8. 13-17; Vitale, et al., v. RLD Grp., LLC, et al., Index No. 704272/2013 (N.Y. Sup. Ct., Queens Cnty. July 22, 2016), ECF No. 16-5 at 1.

Plaintiff has been defending Defendant Top Grade in the Underlying Action in which the Vitales moved for summary judgment against the state defendants RLD, Artec, Falcon, Certified, Mr. Zaloum and Defendant Top Grade on the issue of liability for damage suffered by the Vitale Property as a result of excavation work performed during construction at the RJD Property.  See ECF No. 1 ¶¶ 17, 23; ECF No. 16-5, passim.  The Vitale motion principally rested on the evidence described below.

First, an affidavit from Mr. Zaloum dated May 12, 2012, in which he affirmed that, "given the age and pre-existing condition" of the building on the Vitale Property, it "was more susceptible to vibration-related damages."

5

According to Mr. Zaloum, this caused him to revise "the excavation shoring plans[]" because "he anticipated that the new technique would further reduce ground surface vibration, and thus, reduce the likelihood" of excavation-related damage to the Vitale Property.  Id. at 2.

Second, an affidavit from the Vitales's son, Jack Vitale, in which he affirmed that, "[p]rior to [the state] defendants' construction, the subject home was in good condition[,]" with "no leaks from the roof, the exterior and interior walls . . . free from cracks, all doors open[ing] and clos[ing] properly, and all floors . . . plumb."  After observing the state defendants' workers "chipping away at the foundation wall of [the Vitale P]roperty[,]" Jack Vitale called the Department of Buildings ("DOB").  In response, the DOB issued (1) a June 9, 2011, violation to the state defendants "for failure to provide protection [such as shoring and bracing] at [the] sides of excavation"; (2) a March 6, 2012, violation "noting that there was a failure to safeguard all persons and property affected by construction operations, and [stating] there is a diagonal crack in the brick facade wall at [the Vitale P]roperty"; and (3) an April 29, 2012, full stop-work order "due to the excavation undermining [the Vitale] property."  Jack Vitale's affidavit included copies of the DOB violations and photographs of the Vitale Property damage, and stated that as a result of the RLD Property construction, the Vitale Property suffered "severe cracks and damage[,]" "foundation and roof leak[s]," misaligned doors and tilted

6

floors.  Id. at 2-3.

Third, an affidavit from Frank Quatela, a licensed architect and the Vitales's proposed expert witness, who concluded from a 2012 inspection "that the excavation and construction activities had caused severe stress cracks in the foundation, masonry wall, interior partitions, cellar slabs, and exterior walkways and paths[]" of the Vitale Property.  Mr. Quatela further stated that he found "[t]he foundation and exterior western walls were out of plumb[,]" "[f]loors had shifted out of level and sunk[en] down towards the area of the adjacent shoring activity[,]" "[t]he southwestern corner of the house [had] a severe crack[,]" and doors were unable to open and close.  Id. at 3.

Defendant Top Grade responded that this evidence "failed to demonstrate that the excavation work proximately caused [the Vitales's] damages[,]" and Certified and Mr. Zaloum made similar arguments.  Id.  For example, Certified and Mr. Zaloum submitted an affidavit from their own expert, engineer Joseph Palmieri, who concluded from his inspection and from "photographs taken on May 3, 2011, which was prior to the excavation [at the RLD Property]," that "vibrations generated from the demolition of . . . structures [on the RLD Property caused Vitale Property damage] prior to any excavation."  Id.  State defendants also generally argued that the summary judgment was premature because, among other things, they had not yet been able to test Jack Vitale's evidence by deposing him or

Mr. Quatela's evidence by challenging his expert qualifications.  See id. at 4-5.

In an Order dated July 22, 2016, the state court granted the Vitales's motion and entered summary judgment against the state defendants RLD, Artec, Falcon, Certified, Mr. Zaloum and Defendant Top Grade on the issue of their liability for damage caused to the Vitale Property as a result of their excavation activities ("Underlying Order").  See id. at 5-6.  The Underlying Order held that Administrative Code of the City of New York (titl. 28, ch. 7) B.C. § 3309.4 ("Section 28-3309.4") "imposes strict liability on any person who causes an excavation to be made[,]" and that the Vitales "demonstrated their prima facie entitlement to summary judgment based solely on [Mr.] Zaloum's affidavit stating that excavation activities were being performed, and [that the Vitales's] building was damaged by such activities."  Id. at 5.  The Underlying Order found that the state defendants' arguments about the pre-existing condition of the Vitale Property or the damage caused to the Vitale Property by pre-excavation demolition activities "[did] not factor into a proximate cause analysis under Section 28-3309.4[,]" but were "relevant to the extent of damage caused [to the Vitale Property] by the excavation activities."  Id.  (citation omitted).  The Underlying Order also did not credit the state defendants' arguments that the motion was premature prior to Jack Vitale's deposition or Mr. Quatela's expert qualification, finding such evidence could be relevant to the measure of damages for determination at trial.  See id. at 5-

6.[3]

## II. Procedural History

Plaintiff commenced this action against Defendants alleging only one cause of action for declaratory judgment. See ECF No. 1 ¶ 25. Although Plaintiff's Complaint also names Certified and the Vitales as Defendants, it states that "no relief is sought against Certified . . . and the Vitales[,]" and that "[t]hese parties are named herein by virtue of [their] having asserted claims against [Defendant] Top Grade." See id. ¶ 7. Plaintiff asks the Court for a judgment declaring, in light of

---

[3] Other courts applying Section 28-3309.4 have similarly imposed strict liability for damages upon "the person who causes" an excavation to be performed. MPJ Enters., Inc. v. 16449 CBB, LLC, 2017 WL 8890701, at *2 (N.Y. Sup. Ct., Queens Cnty. Aug. 1, 2017) (quoting 492 Kings Realty, LLC v. 506 Kings, LLC, 105 A.D.3d 991 (2d Dep't 2013)); see Yenem Corp. v. 281 Broadway Holdings, 18 N.Y.3d 481, 491 (N.Y. 2012) (reversing an erroneous "finding that the building's allegedly poor condition raised an issue of fact as to causation" under Section 28-3309.4's predecessor and equivalent New York City Administrative Code Section 27-1031(b)(1) imposing strict liability for excavation work violating the provision, finding that the plaintiff was entitled to summary judgment on the issue of liability, and noting that "though certainly relevant to any measure of damages, consideration of the building's prior condition does not factor into a proximate cause analysis"); 211-12 N. Blvd. Corp. v. LIC Contracting, Inc., 186 A.D.3d 69, 76 (2d Dep't 2020) (finding that Section 28-3308.4 "contains the equivalent provision of former Administrative Code of the City of New York § 27-1031(b)(1)[,]" which "also imposes strict or absolute liability on a person who causes an excavation to be made"). "Such persons have included owners, general contractors, and excavation subcontractors who perform an excavation in a manner that damages the adjoining property as well as those parties who assume control over and are responsible for the methods employed and the safety precautions taken during the excavation process[.]" MPJ Enters., Inc., 2017 WL 8890701, at *2 (citations omitted).

the Underlying Order in the Underlying Action, (1) that Plaintiff has no further obligation to defend or indemnify Defendant Top Grade in the Underlying Action, and (2) that Plaintiff may withdraw from the defense of Defendant Top Grade in the Underlying Action.  See id.  According to Plaintiff, this is because such obligations fall outside the effective date of the Contract, are excluded from Policy coverage under the Earth and Land Movement Exclusion, or both.  See id. ¶ 19.

Plaintiff claims that it completed service upon Defendant Top Grade, Certified and the Vitales, and that they failed to answer or otherwise respond even though this Court issued an Order directing them to do so and mailed the Order to their last known addresses.  See ECF Nos. 2, 5, 6, 11; Dkt. Entry 11/19/2020.  The Clerk of the Court entered certificates of default against Defendants, see ECF No. 13, and Plaintiff made the instant default judgment motion, see ECF No. 16, which has been referred for a report and recommendation.   In the motion, Plaintiff asks for a judgment declaring that it does not owe a duty to defend or indemnify Defendant Top Grade in the Underlying Action.  See ECF No. 16-7.

### III.   Legal Standards

#### a. Declaratory Judgment

Rule 57 of the Federal Rules of Civil Procedure provides that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."  Fed. R. Civ. P. 57.   28 U.S.C. § 2201, the Federal Declaratory Judgment

Act, provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Section 2202 provides that further relief based on a declaratory judgment or decree "may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by a judgment."  28 U.S.C. § 2202.   The Declaratory Judgment Act does not expand federal jurisdiction by creating an independent basis for jurisdiction such that a party seeking relief thereunder must satisfy federal subject matter jurisdiction requirements.  See Correspondent Servs. Corp. v. First Equities Corp. of Florida, 442 F.3d 767, 770 (2d Cir. 2006) (affirming the dismissal of the plaintiff's declaratory judgment claim due to lack of diversity subject matter jurisdiction, holding that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts"); Paulsen v. Lehman, 839 F. Supp. 147, 156 (E.D.N.Y. 1993) ("Significantly, the Act itself merely creates a remedy of declaratory relief . . . . That is, there must be an independent basis of federal jurisdiction before the [c]ourt may render a declaratory judgment[.]") (emphasis in original).

In accordance with the statutory language, it has also been held that "before a court may issue any declaratory order, it must satisfy itself that the matter

presents an actual case or controversy." <u>U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp.</u>, 321 F. Supp. 3d 313, 316 (E.D.N.Y. 2018).  "The question to be asked is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  <u>Century Sur. Co. v. Odyssey Mech. Corp.</u>, No. 09 Civ. 1040 (ILG), 2011 WL 4529637, at *3 (E.D.N.Y. Sept. 27, 2011) (quoting <u>Olin Corp. v. Consol. Aluminum Corp.</u>, 5 F.3d 10, 17 (2d Cir. 1993)); <u>see</u> <u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).

Even where the requisite "case or controversy" exists, "the decision as to whether to grant declaratory relief is within the sound discretion of the court." <u>New York Guardian Mortgagee Corp. v. Cleland</u>, 473 F. Supp. 409, 418 (S.D.N.Y. 1979) (collecting cases); <u>see</u> <u>Lijoi v. Cont'l Cas. Co.</u>, 414 F. Supp. 2d 228, 247 (E.D.N.Y. 2006) ("The decision to grant declaratory relief rests in the sound discretion of the district court.").  The Declaratory Judgment Act provides that courts "may declare the rights and other legal relations of any interested party seeking such declaration[,]" 28 U.S.C. § 2201, and it has been held that it is within judicial discretion whether to exercise the jurisdiction permitted by statute or to grant or withhold declaratory relief, <u>see</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282-83 (1995).  Factors bearing upon whether a court will exercise its discretion to

find declaratory judgment proper include "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co., No. 10 Civ. 5491 (SJB), 2020 WL 1908557, at *76 (E.D.N.Y. Apr. 17, 2020) (quoting Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)); see DPC New York, Inc. v. Scottsdale Ins. Co., No. 19 Civ. 1743 (PGG), 2020 WL 2555241, at *6 (S.D.N.Y. May 19, 2020) ("[T]he instant action could provide the parties with specific, conclusive relief in connection with resolving whether [the defendant] has a duty under the [p]olicy to defend and indemnify [the plaintiff]."); Narragansett Bay Ins. Co. v. Battaglia, No. 16 Civ. 847 (ARR) (RER), 2016 WL 7322518, at *3 (E.D.N.Y. Nov. 28, 2016) ("Here, a declaration that [the p]laintiff has no duty to defend or indemnify the [d]efendants will settle an outstanding legal issue, the question of existing duty.  Further, a judgment in [the p]laintiff's favor will offer relief from the uncertainty of whether [the p]laintiff is obligated to continue in its defense of the [d]efendants.  As such, the Court may afford the requested declaratory relief."), R&R adopted, 2016 WL 7324083 (E.D.N.Y. Dec. 15, 2016); Allstate Ins. Co. v. Martinez, No. 11 Civ. 574 (VLB), 2012 WL 1379666, at *10 (D. Conn. Apr. 20, 2012) (collecting cases showing that "courts in [the Second Circuit] routinely find that declaratory judgments with respect to an

insurer's duty to defend and indemnify serve . . . a useful purpose and provide relief from uncertainty"); Atl. Cas. Ins. Co. v. C.A.L. Const. Corp., No. 06 Civ. 4036 (DLI), 2008 WL 2946060, at *4 (E.D.N.Y. July 30, 2008) ("The court's resolution of this action will clarify [the plaintiff's] otherwise uncertain obligations in the [underlying action]."). Courts may also weigh whether declaratory relief would "improperly encroach on the domain of [the] state court" in an underlying action. See Martinez, 2012 WL 1379666, at *10; U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F. Supp. 2d 348, 353 (E.D.N.Y. 2006) ("When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the [Declaratory Judgment Act] is properly invoked.").

### b. Default Judgment Standards

Fed. R. Civ. P. 55 establishes the procedure to obtain a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing Fed. R. Civ. P. 55). First, if a party failed to plead or otherwise defend against an action, the "clerk must enter the party's default." See Fed. R. Civ. P. 55(a). The moving party must then apply to the court for a default judgment after the default has been entered. See Fed. R. Civ. P. 55(b). If the defaulting party still fails to appear or move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b)(2).

A party's default constitutes a concession of all well-pleaded allegations in the complaint, except for those allegations relating to the amount of damages.   See Fed. R. Civ. P. 8(b)(6); see Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Courts have discretion to award declaratory relief in connection with a default judgment motion.  See U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp., 765 F. App'x 534, 536-37 (2d Cir. 2019) (reversing denial of a default judgment motion for a declaration of contract rescission, finding that "the facts that [the plaintiff insurer] alleged in its complaint describe an injury in fact sufficient to establish a concrete case or controversy" because it was reasonably likely that the plaintiff insurer "will face liability to [the defendant insured] based, at minimum, on its duty to defend [the defendant insured] under its policy"); Arch Ins. Co. v. Sky Materials Corp., No. 17 Civ. 2829 (CBA) (LB), 2021 WL 966110, at *7 (E.D.N.Y. Jan. 29, 2021) ("In addition to damages and costs, courts are empowered to grant declaratory relief following default.") (citing In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2d Cir. 1993)), R&R adopted, 2021 WL 964948 (E.D.N.Y. Mar. 15, 2021); PHL Variable Ins. Co. v. Bimbo, No. 17 Civ. 1290 (FB) (ST), 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018) ("[C]ourts are empowered to grand declaratory relief following default[]" provided that the

plaintiff established "that on the law it is entitled to the relief it requests, given the facts established by the default") (citations & internal quotations omitted), R&R adopted, 2018 WL 4689580, at *1 (E.D.N.Y. Sept. 28, 2018); Scottsdale Ins. Co. v. Priscilla Props., LLC, 254 F. Supp. 3d 476, 482-85 (E.D.N.Y. 2017) (granting the plaintiff insurer a declaration of contract rescission against appearing defendants and defaulting defendants pursuant to summary judgment standard for the former and default judgment standard for the latter); Pruco Life. Ins. Co. of New Jersey v. Locker, No. 12 Civ. 882 (ENV) (RML), 2014 WL 1668292, at *1 (E.D.N.Y. Apr. 23, 2014) (noting that, after the court granted the plaintiff's default judgment motion challenging an insurance policy, it had referred the motion for a report and recommendation on the subject of relief, and adopting the recommendation that the court enter a declaratory judgment that the policy was void); Scottsdale Ins. Co. v. LCB Const. LLC, No. 11 Civ. 3316 (ARR) (JMA), 2012 WL 1038829, at *3 (E.D.N.Y. Feb. 14, 2012) ("[C]ourts are empowered to grant declaratory relief following default."), R&R adopted, 2012 WL 1041455, at *1 (E.D.N.Y. Mar. 28, 2012); Cont'l Ins. Co. v. Huff Enters. Inc., No. 07 Civ. 3821 (NGG), 2009 WL 3756630, at *3 (E.D.N.Y. Nov. 6, 2009) ("Were declaratory relief categorically unavailable in default cases, a defending party could prevent a plaintiff from obtaining a declaration simply by not showing up in court."); id. at *4 (noting that federal courts effectuating default judgments are

empowered by Rule 55(b)(2) of the Federal Rules of Civil Procedure to take measures to determine damages, to establish the truth of allegations, or to investigate any other matter, and holding that consideration of whether declaratory relief is appropriate—a matter within the broad discretion of the district court— "should be included among the matters for such investigation"); Beeck v. Costa, 959 N.Y.S.2d 628, 634 (N.Y. Sup. Ct., N.Y. Cnty. 2013) ("Default declaratory judgments will not be granted on the default and pleadings alone but require that the plaintiff establish a right to a declaration against a defendant.") (citation & internal quotations omitted); Nat'l Sur. Corp. v. Peccichio, 264 N.Y.S.2d 177, 178-79 (N.Y. Sup. Ct., Albany Cnty. 1965) ("A declaratory judgment may be issued even if a defendant defaults in appearing or defending the action but a default judgment in a declaratory judgment action will not be granted on the default and pleadings alone for it is necessary that plaintiff establish a right to a declaration against such a defendant[.]").

Where "the issues of liability and declaratory relief are intertwined[,]" default judgment for a plaintiff granting declaratory relief may be appropriate based on a contract's meaning if the contract is in the record.  See Huff Enters. Inc., 2009 WL 3756630, at *5; see also LCB Const. LLC, 2012 1038829, at *3 (finding that the plaintiff seeking declaratory relief following default must "establish that on the law it is entitled to the relief it requests, given the facts as

17

established by the default") (citation omitted), <u>R&R adopted</u>, 2012 WL 1041455, at *1.  In determining damages, including declaratory relief, courts may evaluate the affidavits and documentary evidence submitted by the plaintiff or conduct an evidentiary hearing.  <u>See</u> Fed. R. Civ. P. 55(b)(2); <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

## IV.   Analysis

### a.   This Court Has Diversity Subject Matter Jurisdiction

Plaintiff has demonstrated that the Court has diversity subject matter jurisdiction.  <u>See</u> 28 U.S.C. § 1332.  The parties are diverse, being from different states, <u>see</u> ECF No. ¶¶ 2-6 (Plaintiff Ohio/Arizona, Certified New Jersey/New York, Defendant Top Grade New York, the Vitales New York), and the amount in controversy—the $1,000,000 policy limit for a covered occurrence—exceeds the statutory threshold.  <u>See id.</u> ¶ 10; ECF No. 16-4; <u>Amica Mut. Ins. Co. v. Levine</u>, 7 F. Supp. 3d 182, 187 (D. Conn. 2014) ("[I]f the substance of the declaratory judgment action seeks to determine the validity of an insurance policy, then the policy limit is the amount in controversy.") (citation omitted).  Given the extensive damage alleged at the Vitale Property, it is reasonably likely that any call on the Policy would far exceed $75,000, especially after nearly eight years of litigation.  <u>See Waiting Room Sols. v. Excelsior Ins. Co.</u>, No. 19 Civ 7978 (CS), 2020 WL

5505386, at *6 (S.D.N.Y. Sept. 9, 2020) ("Thus, the issue here is whether there is a reasonable probability that the value of the object of the litigation—that is, [the] alleged duty to defend and indemnify against the underlying claim—has a value exceeding $75,000.").

### b. Defendant Top Grade Has Defaulted

Generally, a process server's affidavit is prima facie evidence of proper service. See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). To prove proper service, "the server should disclose enough facts to demonstrate the validity of service." 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1130 (4th ed. 2019); see Fed. R. Civ. P. 4(1)(1). Plaintiff has shown that it completed service upon Defendant Top Grade pursuant to Rule 4(h)(1)(A), Rule 4(e)(1) and New York law. See ECF No. 1 ¶ 3 (alleging that Top Grade is a New York corporation); ECF No. 5-1 (Plaintiff's process server confirming the delivery of two true copies of the summons and complaint and the $40.00 statutory service fee to "Sue Zouky (Business Document

Specialist 2 and designated agent)" at 1 Commerce Plaza, Albany, New York)[4];

Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y.

B.C.L. § 306(b)(1); Byrnes v. Eltman Law, P.C., No. 18 Civ. 1485 (ADS) (AKJ),

2019 WL 4578922, at *4 (E.D.N.Y. Aug. 22, 2019) (finding that service of process

via Secretary of State was valid upon corporate defendant where affidavit of

service demonstrated delivery of two copies of summons and complaint, along

with a fee of $40.00), R&R adopted, 2019 WL 4575380 (E.D.N.Y. Sept. 20,

2019); Shanker v. 119 E. 30th, Ltd., 63 A.D.3d 553, 553 (1st Dep't 2009)

("Jurisdiction [is] obtained over [the] corporate defendant by service of process on

the Secretary of State irrespective of whether the process every actually reached

defendant.").

---

[4] Although Plaintiff has filed proof of service upon Certified and the Vitales on the docket and frames its default judgment motion as seeking relief against them, see, e.g., ECF No. 16, Plaintiff specifically alleges in its Complaint that "[n]o relief is sought against Certified . . . and the Vitales[,]" ECF No. 1 ¶ 7, such that the Court does not reach the sufficiency of service upon those Defendants.   As discussed supra, Section IV.c.v., Rule 54(c) provides that "[a] default judgment must not differ in kind from . . . what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Mack v. No Parking Today, Inc., No. 16 Civ. 3986 (ARR) (CLP), 2019 WL 490137 (E.D.N.Y. Jan. 9, 2019), R&R adopted in part, rejected in part, 2019 WL 337096, at *2 (E.D.N.Y. Jan. 28, 2019) ("Accordingly, particularly where a defendant has never appeared in a case, any default judgment must be limited to the relief that was demanded in the pleadings at the time the default was entered.").

### c. Plaintiff's Request For Declaratory Judgment Is Supported By Law And Facts

#### i. The Earth And Land Exclusion Bars Policy Coverage For Property Damage Caused In Whole Or In Part By Excavation Work

Under New York law, insurers seeking to negate coverage by virtue of a policy exclusion "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Cont. Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 652 (N.Y. 1993); see Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (N.Y. 2003). Courts interpret exclusions narrowly and resolve "[a]ny ambiguities . . . in favor of the insured." Marino v. N.Y. Tel. Co., 944 F.2d 109, 112 (2d Cir. 1991); see Ebrahimian v. Nationwide Mut. Fire Ins. Co., 960 F. Supp. 2d 405, 413 (E.D.N.Y. 2013); Ocean Partners, LLC v. N. River Ins. Co., 546 F. Supp. 2d 101, 110 (S.D.N.Y. 2008) ("The insurer must establish that the exclusion is stated in clear and unmistakable language, . . . and that its interpretation of the exclusion is the only construction that could fairly be placed thereon."); Rapid-Am Corp., 80 N.Y.2d at 652-55.

In Bentoria Holdings, Inc. v. Travelers Indemnity Co., 20 N.Y.3d 65, 67 (N.Y. 2012), the New York Court of Appeals held that when an "earth movement" exclusion was "expressly made applicable to 'man made' movement of earth," it unambiguously applied to excavation such that "loss caused by excavation [was]

excluded from the policy."  See Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co., No. 13 Civ. 1570 (ARR) (VVP), 2014 WL 3958080, at *6 (E.D.N.Y. Aug. 13, 2014) (noting earth-movement exclusions applying to natural or man-made causes "bar[] recovery for damages due to excavation on adjacent lots" under New York law); Brice v. State Farm Fire & Cas. Co., 761 F. Supp. 2d 96, 98 (S.D.N.Y. 2010) (holding that earth movement exclusion in homeowner's insurance policy barred coverage for damage caused to the insured's building as a result of excavation and improper underpinning on the adjacent lot where the exclusion's language was clearly "intended to include man-made events"); Rego Park Holdings, LLC v. Aspen Specialty Ins. Co., 140 A.D.3d 1147, 1149 (2d Dep't 2016) (affirming judgment declaring that an insurer had no duty to defend or indemnify the insureds for construction-related subsidence damages where subsidence exclusion—excluding coverage for movements of land or earth, "regardless of whether the foregoing emanates from . . . any operations performed by or on behalf of any insured"—"was susceptible of no other reasonable interpretation").

Where an exclusion clause "includes language commonly referred to as an 'anti-concurrent clause,' which states that loss or damage due to earth movement is not covered regardless of any other cause or event that contributes concurrently or in any sequence to the loss[,]" New York courts have held that the clause excludes

coverage for damage caused by an excluded peril even when covered perils also contribute to the damage.  Coney Island Auto Parts Unlimited, 2014 WL 3958080, at *6 (citing Alamia v. Nationwide Mut. Fire Ins. Co., 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007)); see Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 458-59 (S.D.N.Y. 2015) ("[I]n light of the anti-concurrent causation language, . . . if corrosion contributed concurrently or in any sequence to the loss or damage . . . , then the corrosion exclusion forecloses coverage.") (citation & internal quotations omitted); ABI Asset Corp. v. Twin City Fire Ins. Co., No. 96 Civ. 2067 (AGS), 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997) ("New York courts have interpreted similar clauses to mean that where a loss results from multiple contributing clauses, coverage is excluded if the insurer can demonstrate that any of the concurrent or contributing causes of loss are excluded by the policy.") (collecting cases).

Under the clear and unambiguous language of the Policy's Earth or Land Movement Exclusion, the Policy does not apply to property damage caused "by the movement . . . of earth or land, regardless of . . . [w]hether such . . . movement arises from natural or man-made forces or causes[.]"  ECF No. 16-5 at 60.  Courts have found similar language bars coverage for property damage caused by excavation activities.  See Coney Island Auto Parts Unlimited, 2014 WL 3958080,

at *6; <u>Brice</u>, 761 F. Supp. 2d at 98; <u>Bentoria Holdings</u>, 20 N.Y.3d at 67; <u>Rego Park</u>

<u>Holdings</u>, 140 A.D.3d at 1149.

It is also clear and unambiguous that the Earth or Land Movement Exclusion

contains an anti-concurrent clause making the Policy inapplicable even if the

claimed property damage was caused "in whole or in part" by earth or land

movement regardless of whether that movement occurs "[i]ndependently of; as a

result of; in concurrence or connection; or in any sequence associated with any

other natural or man-made forces, causes, events or operations." ECF No. 16-4 at

60. Assuming <u>arguendo</u> that some of the damage to the Vitale Property was caused

by construction or demolition work separate from Defendant Top Grade's

excavation activities, the language of the anti-concurrent clause here is similar to

language where courts have held that the clause excludes coverage for damage

caused by an excluded peril even when covered perils also contribute to the

damage. <u>See Coney Island Auto Parts Unlimited</u>, 2014 WL 3958080, at *6;

<u>Lantheus Med. Imaging</u>, 255 F. Supp. 3d at 458-59; <u>ABI Asset Corp.</u>, 1997 WL

724568, at *2.

### ii.  There Is A Justiciable Claim

"The duties to defend and indemnify are legally distinct." <u>Am. Empire</u>

<u>Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc.</u>, No. 16 Civ.

161521 (ADS) (AYS), 2017 WL 4118390, at *6 (E.D.N.Y. Aug. 30, 2017)

(citation & internal quotation omitted), R&R adopted, 2017 WL 4119266 (E.D.N.Y. Sept. 15, 2017).  "Claims regarding a duty to defend against pending actions are generally justiciable."  Id.; see Gov't Emps. Ins. Co. v. Saco, No. 12 Civ. 5633 (NGG) (MDG), 2014 WL 639419, at *1 (E.D.N.Y. Feb. 18, 2014) (denying motion to dismiss insurer's declaratory action against the insured and injured party where an underlying action was brought by the injured party against the insured); W. Heritage Ins. Co. v. Jacobs Dev. Corp., No. 12 Civ. 5718 (NGG) (LB), 2014 WL 297792, at *9 (E.D.N.Y. Jan. 27, 2014) (adopting report and recommendation that found "no doubt that the parties' dispute over the plaintiff's duty to defend [the defendant] in the underlying . . . action is an active controversy especially where plaintiff has extended a courtesy defense to [the defendant] despite disclaiming coverage") (citation & internal quotation omitted); Am. Empire Surplus Lines Ins. Co. v. MJM Assocs. Constr. LLC, No. 12 Civ. 0080 (ENV), 2012 WL 2830014, at *1 (E.D.N.Y. July 10, 2012) (finding that the plaintiff insurer's declaratory judgment action presented a case or controversy between the plaintiff and an individual defendant who brought claims against the defendant insured in an underlying state court tort action for property damage, and denying the individual defendant's motion to dismiss on that ground).  "[I]t is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established." Pac. Emps. Ins. Co. v. Saint Francis Care Inc.,

729 F. App'x 129, 130 (2d Cir. 2018) (quotations & citations omitted); see Orion Plumbing & Heating Corp., 321 F. Supp. 3d at 318 (collecting cases for the proposition that a justiciable case or controversy exists when an insurer's insured has been sued in an underlying action and liability imposed in connection with an incident or accident as to which coverage is disputed). Nonetheless, the Second Circuit has explained that the fact that "the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action[,]" Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F. 2d 32, 35 (2d Cir. 1992). "Rather, courts should focus on 'the practical likelihood that the contingencies will occur[,]" or whether there is "no practical likelihood" of liability." Id.

Plaintiff has shown a justiciable controversy as to both its duty to defend and indemnify with its allegations regarding the events at issue, the Underlying Action and Underlying Order, in which the state court has imposed liability against Defendant Top Grade in connection with the incident as to which coverage is disputed. See ECF No. 16-5; Saint Francis Care Inc., 729 F. App'x at 130; Saco, 2014 WL 639419, at *1; Jacobs Dev. Corp., 2014 WL 297792, at *9; MJM Assocs. Const. LLC, 2012 WL 2830014, at *1.

### iii. Nonmutual Offensive Collateral Estoppel Applies To The Underlying Order's Factual Finding That Defendant Top Grade Performed Excavation Work That Caused Damage To The Vitales's Property

The Court here must determine whether the Underlying Order's fact finding that Defendant Top Grade performed excavation work that caused damage to the Vitale Property has preclusive effect here. Federal trial courts enjoy broad discretion to decide when to apply issue preclusion offensively. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979).

"Nonmutual offensive collateral estoppel, a form of issue preclusion, precludes a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff." Bifolck v. Philip Morris USA Inc.,936 F.3d 74, 79 (2d Cir. 2019) (citations & internal quotations omitted). A plaintiff must satisfy four conditions to invoke this doctrine, which are that "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." Id. In addition to these four prongs, "in order to blunt the fear that nonmutual offensive collateral estoppel may be unfair to a defendant or fail to promote judicial economy, district courts must ensure that application of the doctrine is not unfair." Id. (citing Parklane Hosiery, 439 U.S. at 331 ("[W]here . . .

the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow [it].").  Fairness analysis factors are equitable considerations that include (1) whether the later action affords the defendant "procedural opportunities unavailable in the [prior proceeding] that could readily cause a different result," Bifolck, 936 F.3d at 84 (citing Parklane Hosiery, 439 U.S. at 331); (2) whether the findings in the prior proceeding were made by a judge sitting as a trier of fact and not by a jury, see S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 304 (2d Cir. 1999); (3) whether the defendant had an incentive to litigate the relevant issue in the prior proceeding, particularly in light of whether the later action would have been foreseeable to it, see id.; and (4) "the relative scope or complexity of the two actions and whether they involve different causes of action," Bifolck, 936 F.3d at 84.

Because the Underlying Order is the law of the case in the Underlying Action but not a final judgment, it is important to note that the concept of finality differs for the purposes of appealability and collateral estoppel.  See Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961) (holding that finality in the context of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again"); see also Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir. 1964) (finding that "collateral estoppel does not require

a judgment which ends the litigations and leaves nothing for the court to do but execute a judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated").  In the Second Circuit, "whether a ruling is sufficiently 'final' for preclusion purposes turns on 'such factors as the nature of the decision (i.e., that it was not avowedly tentative, the adequacy of the hearing, and the opportunity for review')."  Ferring B.V. v. Serentiy Pharms., LLC, 391 F. Supp 3d 265, 285 (S.D.N.Y. 2019) (quoting Lummus, 297 F.2d at 89).

Turning to the collateral estoppel factors under review, the identicality prong of the test is met because the issue for which the Underlying Order is invoked for preclusion concerns "only the existence or non-existence of certain facts" relevant to Plaintiff's argument that the Earth and Land Movement Exclusion applies in this action, i.e., that Defendant Top Grade performed excavation work that caused damage to the Vitale Property; the Underlying Order is not invoked for the significance of its legal analysis of Section 28-3309.4.  See Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 48 (2d Cir. 2014) (distinguishing a hearing officer's legal finding in a prior proceeding from the underlying factual findings, and holding that identical factual issues in the later proceeding "precluded [the plaintiff] from arguing otherwise at trial"); Battaglia, 2016 WL 7322518, at *3 (finding that the preclusive nature of the defendant insureds' guilty pleas in an underlying criminal case meant they could not subsequently claim that events were

accidental and within the scope of insurance policies that excluded intentional wrongful acts), R&R adopted, 2016 WL 7324083 (citing Colliton v. Donnelly, 399 F. App'x 619, 620 (2d Cir. 2010) (finding that a guilty plea "bars litigation of all the factual issues upon which [it] was based")); Alamo v. McDaniel, 44 A.D.3d 149, 154 (1st Dep't 2007) (holding that a factual finding in a prior administrative proceeding that the defendants were responsible for an accident had preclusive effect in subsequent proceeding where the issue was identical).

Next, the necessity prong of the collateral estoppel test is met because the factual finding that Defendant Top Grade performed excavation work that caused damage to the Vitale Property was essential to the Underlying Order's entry of summary judgment against Defendant Top Grade on the issue of its strict liability pursuant to Section 28-3309.4. See ECF No. 16-5, passim; N.Y.C. Admin. Code § 3309.4 (providing in relevant part that "[w]henever soil or foundation work occurs, regardless of the depth of such, the person who causes such to be made shall, at all times during the course of such work and at his or her own expense, preserve and protect from damage any adjoining structures[]"); Bifolck, 936 F.3d at 83 (finding the necessity requirement met where the issue is essential to a finding of liability or, in the alternative, where the issue is essential to a remedy imposed); In re Bode, No. 14 Civ. 71502 (REG), 2015 WL 4594539, at *5 (Bankr. E.D.N.Y. July 30, 2015) (noting that where underlying decision deemed payments to be commissions

made to an unlicensed broker and not legal fees, the court was bound by the determination because it "was essential in finding liability").

Also satisfied are the prongs of the collateral estoppel analysis pertaining to whether Defendant Top Grade had a full and fair opportunity to litigate the factual findings at issue in the Underlying Order, and whether those findings were actually litigated and decided. As detailed in the Underlying Order, Defendant Top Grade answered the Vitales's complaint and also opposed their liability summary judgment motion that gave rise to the factual finding that Defendant Top Grade performed excavation work that caused damage to the Vitale Property. See ECF No. 16-5; Evans v. Ottimo, 469 F.3d 278, 282 (2d Cir. 2006) ("[F]or a question to have been actually litigated . . . , it must have been . . . placed in issue and actually determined in the prior proceeding."); Deutsch v. Integrated Barter Intern., Inc., 700 F. Supp. 194, 199 (S.D.N.Y. 1988) (finding that the adequacy of the party's opportunity to litigate an underlying state court matter "warrant[ed] little discussion" where "it was "beyond question that the forum was proper, the claims . . . were important, [the party] had every incentive to litigate in the state court," and there was no evidence counsel was incompetent).

A weighing of the parties' interests pursuant to fairness analysis also tips in favor of the application of offensive collateral estoppel to the Underlying Order's factual finding. There is no argument offered as to why this action would "afford

[Defendant Top Grade] procedural opportunities unavailable in the [Underlying Action] that could readily cause a different result[.]" Bifolck, 936 F.3d at 84 (citing Parklane Hosiery, 439 U.S. at 331). Although the Underlying Order's findings were entered by a judge sitting as a trier of fact and not by a jury, this was in the absence of genuine issues of material fact for jury adjudication such that "the Seventh Amendment poses no insurmountable barrier to applying collateral estoppel." Monarch Funding Corp., 192 F. 3d at 304. Further, Defendant Top Grade had an incentive to litigate the relevant issue in the Underlying Action, particularly because Plaintiff's instant action regarding the Earth and Land Exclusion would have been foreseeable to it. See Bifolck, 936 F.3d at 84; Monarch Funding Corp., 192 F.3d at 304.

In light of these factors all favoring Plaintiff, this Court permits the application of offensive collateral estoppel to the Underlying Order's factual finding against Defendant Top Grade such that it has preclusive effect here. As a result, the Underlying Order establishes that Defendant Top Grade performed "excavation activities," and that the Vitale Property "was damaged by such activities." ECF No. 16-5 at 2, 5.

iv. **The Court Should Exercise Its Discretion To Grant Plaintiff's Requested Judgment Declaring That It Has No Duty To Defend Or Indemnify Defendant Top Grade In The Underlying Action**

Because the Earth and Land Exclusion bars Policy coverage for property damage caused in whole or in part by excavation work, see supra, Section IV.c.i., and Defendant Top Grade performed excavation work causing damage to the Vitale Property, see supra, Section IV.c.iii, Plaintiff has shown that the Underlying Action is excluded from Policy coverage under the Earth and Land Movement Exclusion. Having reached this conclusion, this Court also finds that granting Plaintiff's requested judgment declaring that it has not duty to defend or indemnify Defendant Top Grade would serve a useful purpose in clarifying and settling the legal relations at issue between Plaintiff and Defendant Top Grade, and potentially afford relief from the uncertainty and insecurity presented by questions raised. See supra, Section III.a.; DPC New York, 2020 WL 2555241, at *6; Martinez, 2012 WL 1379666, at *10; Battaglia, 2016 WL 7322518, at *3, R&R adopted, 2016 WL 7324083; C.A.L. Const. Corp., 2008 WL 2946060, at *4. Given that the Underlying Order is a basis for Plaintiff's requested declaratory judgment against Defendant Top Grade, granting the declaratory relief therefrom follows and does not "encroach on the domain of [the] state court." Martinez, 2012 WL 1379666, at *10; see Kum Gang, Inc., 443 F. Supp. 2d at 353 ("When a determination of the

duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the [Declaratory Judgment Act] is properly invoked.").

### v. The Court Should Deny Plaintiff's Requested Declaratory Relief Against Certified And The Vitales

Although much of the above discussion arguably also weighs in favor of a judgment declaring Plaintiff's rights and obligations vis-à-vis Certified and the Vitales, courts have "significant discretion" to consider whether a claim was adequately pleaded for the purposes of granting a default judgment motion. See Nat'l Life Ins. Co. v. Dong, No. 19 Civ. 4597 (NGG) (CLP), 2021 WL 1518343, at *5 (E.D.N.Y. Apr. 16, 2021) (citing Fed. R. Civ. P. 54(c)'s language that "[a] default judgment must not differ in kind from . . . what is demanded in the pleadings"). With this in mind, although Plaintiff makes its default judgment motion against Certified and the Vitales along with Defendant Top Grade, Plaintiff's Complaint specifically and confusingly states that "[n]o relief is sought against Certified . . . and the Vitales. These parties are named herein by virtue of having asserted claims against Top Grade." Compare ECF No. 16, with ECF No. 1 ¶ 7. In light of the foregoing, this Court finds that it would not be proper at this point to exercise its discretion to grant Plaintiff's default judgment against Certified or the Vitales, as it would be unfair to enter declaratory judgment against them when the Complaint's plain language disclaims Plaintiff's intention to seek relief from them. See Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007) (finding that

the plaintiff's mailing of submissions to defendants after entry of default against

them meant that the notice of damages sought "may therefore have come too late

in the day for defendants to undo the consequences of their prior decision to

default, greatly limiting [the notice's] practical value") (citing Appleton Elec. Co.

v. Graves Truck Line, Inc., 635 F.2d 603, 611 (7th Cir. 1980) ("The apparent

purpose of limiting default judgments to the amount prayed for is to protect

defendants who choose to default, relying on the damage ceilings contained in

plaintiffs' prayers.")); Renaissance Search Partners v. Renaissance Ltd., L.L.C.,

No. 12 Civ. 5638 (DLC) (SN), 2014 WL 12770400, at *9 (S.D.N.Y. July 3, 2014)

("The plaintiff cannot now seek a type of relief not demanded in the complaint

based on a claim not alleged in the complaint, particularly when the request is for

something as substantial as a permanent injunction."), R&R adopted, 2014 WL

4928945 (S.D.N.Y. Oct. 1, 2014); 10 Charles A. Wright, Arthur R. Miller, & Mary

K. Kane, Federal Practice & Procedure § 2663 (3d ed.1998) ("[T]he defending

party should be able to decide on the basis of the relief requested in the original

pleading whether to . . . defend the action.").

## V.     Conclusion

For the foregoing reasons, this Court respectfully recommends that the

District Court deny Plaintiff's motion for default judgment motion against

Defendants Certified and the Vitales without prejudice and with leave to amend the

Complaint within 30 days of the adoption of this Order, if it is adopted; grant

Plaintiff's motion for default judgment against Defendant Top Grade; and enter

judgment declaring that Plaintiff owes no further duty to defend or indemnify

Defendant Top Grade in the Underlying Action, and that Plaintiff may withdraw

from the defense of Defendant Top Grade in the Underlying Action consistent with

its state court obligations.  See Vitale, et al., v. RLD Grp., LLC, et al., Index No.

704272/2013 (N.Y. Sup. Ct., Queens Cnty.).

## VI.    Objections

A copy of this report and recommendation will be provided to Plaintiff via

ECF and sent via U.S. mail to Defendants Top Grade Excavating, NY, Inc., 1

Harrison Avenue, Yonkers, New York, 10705; Certified Testing Laboratories, Inc.,

2623 Roberts Avenue, Bronx, New York 10461; Certified Testing Laboratories,

Inc., 155 U.S. Route 130, Fieldsboro, New Jersey 08505; Jack Vitale, 73-08

Ditmars Boulevard, East Elmhurst, New York, 11370; Jack Vitale, 74-19 Ditmars

Boulevard, 1st Floor, East Elmhurst, New York 11370; Diane Vitale, 73-08

Ditmars Boulevard, East Elmhurst, New York, 11370; and Diane Vitale, 74-19

Ditmars Boulevard, 1st Floor, East Elmhurst, New York 11370.  Any written

objections to this report and recommendation must be filed with the Clerk of the

Court within fourteen (14) days of service of this report.  See 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for

filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
          August 13, 2021

_Vera M. Scanlon_
VERA M. SCANLON
United States Magistrate Judge